**Ron THRONSON, Tom Luce and Michelle Crenshaw, Plaintiffs-Appellees,**

**v.**

**Martin MEISELS and Miriam Meisels, Defendants-Appellants.**

No. 85–2322.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1986.

Decided Aug. 28, 1986.

Rehearing and Rehearing En Banc Denied Oct. 2, 1986.

Edwin R. McCullough, Chicago, Ill., for plaintiffs-appellees.

Howard Joseph, Chicago, Ill., for defendants-appellants.

Before WOOD and EASTERBROOK, Circuit Judges, and BARKER, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants-appellants Martin and Miriam Meisels appeal a judgment which was entered against them by the district court in accordance with the jury's verdict. The

---

* The Honorable Sarah Evans Barker, United States District Judge for the Southern District of Indiana, is sitting by designation.

Meiselses seek to set aside the verdict arguing that it is unsupported by the evidence. In the alternative, they contend that they are entitled to a new trial on grounds that the district court erred in admitting certain evidence over their objections. We affirm.

### I.

Plaintiffs-appellees Ron Thronson, Tom Luce and Michelle Crenshaw (the "plaintiffs") brought this action against the Meiselses alleging racial discrimination in housing in violation of 42 U.S.C. § 1982.[1] Thronson and Luce, who are both white males, and Crenshaw, a black female, sought to rent an apartment owned by the Meiselses located in Chicago, Illinois. The Meiselses had advertised in a local newspaper seeking prospective tenants for the apartment. Thronson answered this advertisement and, on February 7, 1983, Mrs. Meisels showed him the apartment. Thronson later made a second appointment so that his roommates, Luce and Crenshaw, could also see the apartment.

On February 10, 1983, Mr. Meisels showed the apartment to all of the plaintiffs. At that time, Mr. Meisels obtained some basic credit information about the plaintiffs and told them that because he and his wife were leaving for a two-week vacation that day, he would check their references and call back later that afternoon indicating whether he would approve their rental application. Thronson also gave Mr. Meisels a check for $400.00 as a deposit for the apartment.

After the plaintiffs left, Mr. Meisels made several telephone calls to check their credit references, including calls to the plaintiffs' then-present landlord and their respective employers. Mr. Meisels was told by the plaintiffs' landlord that they paid their rent promptly. Mr. Meisels also learned that each of the plaintiffs was employed, although he was unable to determine their actual incomes.

Later that afternoon, Mr. Meisels went to Thronson's bank to cash the deposit check. The bank refused to cash the check on grounds that there were insufficient funds in Thronson's account. Mr. Meisels then called Thronson to tell him that the bank would not honor his check. Thronson testified that Mr. Meisels said that all the other references checked out, but that he was unable to rent to the plaintiffs because of their financial situation. Thronson told Mr. Meisels that he would resolve the problem with the check.

Thronson thereafter deposited $700.00 in his checking account to cover the check he had written to Mr. Meisels. Thronson testified that he asked the teller why the bank had refused to cash the check and was told that it could possibly have been that the person presenting the check did not have an account at the bank. After making his deposit, Thronson attempted to call Mr. Meisels to tell him that there were now sufficient funds to cover the check, but was unable to reach him since the Meiselses had already left on vacation.

After the Meiselses returned from their vacation, Thronson called Mr. Meisels to inquire about the plaintiffs' status with respect to the apartment. Thronson testified that Mr. Meisels told him he had decided not to rent to the plaintiffs because they were a "mixed couple" and because their deposit check had not cleared. Mr. Meisels testified that he told Thronson that he decided not to rent to the plaintiffs because of their financial situation. Thronson later informed both Luce and Crenshaw that they did not get the apartment because Mr. Meisels did not want to rent to a "mixed couple." Thronson told Luce that Mr. Meisels did not explain what he meant by "mixed couple." At trial, Crenshaw testified that she felt "mixed couple" was in reference to her being black while her two roommates were white.

---

1. 42 U.S.C. § 1982 provides:
   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

After being rejected by the Meiselses, Thronson filed a complaint against them with the Chicago Leadership Council, an organization devoted to ensuring fair housing. Acting upon the complaint, Hans Hintzen, posing as a prospective tenant, looked at the Meiselses' apartment. Hintzen, a white male, was employed at the time as an investigator for the Chicago Leadership Council and had participated in about 200 tests aimed at exposing housing discrimination. Hintzen testified that on March 11, 1983, while he was inspecting the apartment, Mrs. Meisels asked him if he would mind telling her if he and his other two roommates were "all the same color." Before he could answer, Hintzen said that Mrs. Meisels apologized for asking this question and explained that there was another group of people who applied for the apartment and that Hintzen looked like one of them. Hintzen testified that Mrs. Meisels said she and her husband could not rent to that group because one of them was black. After leaving the apartment, Hintzen filed a written report concerning his investigation and his meeting with Mrs. Meisels.

Mrs. Meisels testified that her recollection of Hintzen's visit indicated that he was not that interested in leasing the apartment. She could not remember specifically what Hintzen did in the apartment except that he looked through it quickly. Mrs. Meisels denied having made any racially biased statements to Hintzen.

Another "tester," Shirley Lambert, also looked at the apartment on the same day that Hintzen did. At trial, Lambert, a black female, testified that, among other things, Mrs. Meisels had said that she and her husband did not like to rent to singles.

The jury eventually returned a verdict in the plaintiffs' favor awarding them $3,000 in actual damages and $8,000 in punitive damages. The Meiselses appeal from the district court's entry of judgment in accordance with the jury's verdict.

## II.

We first examine the Meiselses' challenge to the sufficiency of the evidence supporting the jury's verdict. Our review of the record indicates, and the Meiselses do not contend otherwise, that they failed to move for a directed verdict at the close of the evidence pursuant to Fed.R.Civ.P. 50(a). Moreover, at oral argument, the Meiselses conceded that they had failed to file a motion for judgment n.o.v.[2] *Cf. Benson v. Allphin,* 786 F.2d 268, 274 (7th Cir.1986) (noting that "this circuit has allowed something less than a formal motion for a directed verdict to preserve a party's right to move for judgment notwithstanding the verdict."). In spite of these failures, the Meiselses contend that their appeal is from the jury's verdict and that therefore they are free to raise the sufficiency issue now. We disagree. "It is thoroughly established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2536, at 593 (1971 and 1986 Supp.) (footnote omitted). *Accord Wilson v. Attaway,* 757 F.2d 1227, 1237 (11th Cir.1985); *Myers v. Norfolk Livestock Market, Inc.,* 696 F.2d 555, 559 (8th Cir.1982); *Clarkson Co. Ltd. v. Shaheen,* 660 F.2d 506, 512–13 n. 6 (2d Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). Although the record indicates that the Meiselses moved for a directed verdict at the end of the plaintiffs' case, this is of little consequence. For purposes of preserving the right to challenge the sufficiency of the evidence on appeal, "a motion at the close of [the plaintiffs'] case will not do unless it is renewed at the close of the evidence...." 9 C. Wright & A. Miller, § 2536, at 593. Indeed, if this were not the case, "[o]ur consideration of evidence-adequacy would be tantamount to considering issues raised for the first time on ap-

---

**2.** The Meiselses also acknowledged at oral argument that they failed to file a timely motion for a new trial pursuant to Fed.R.Civ.P. 59.

peal...." *Budge v. Post*, 643 F.2d 372, 374 (5th Cir.1981). *See Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir.1978) ("Federal appellate courts simply do not directly review jury verdicts. The policy underlying this rule is sound: a party is not permitted to gamble on the verdict and later question the sufficiency of the evidence that led to his defeat.").

■ This is not to say, however, that the failure to move for a directed verdict is, in all situations, fatal to a sufficiency challenge. In rare cases, courts have created an exception to the general rule and have gone on to consider the sufficiency of the evidence even in the absence of a timely motion for a directed verdict. In *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53 (2d Cir.1978), for example, the court reviewed the sufficiency of the evidence where failure to do so, in its view, would have constituted manifest injustice. In invoking such an exception, courts have, however, limited their inquiry " 'to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice.' " *Budge*, 643 F.2d at 374 (emphasis in original) (quoting, *inter alia, Coughlin*, 571 F.2d at 297).

■ Even assuming that this standard is applicable to the present case, it is inconsequential since there is clearly evidence supporting the jury's verdict against the Meiselses and we can find no plain error which, if not remedied, would result in a miscarriage of justice. One of the testers, Hans Hintzen, testified that Mrs. Meisels told him that she and her husband were unable to rent to a group that had looked at the apartment earlier because one of them was black. Although the record does not indicate whether this group was in fact the plaintiffs, the jury could have reasonably reached such a conclusion by inference. The jury also heard the testimony of another tester, Shirley Lambert. Lambert, who is black, testified that Mrs. Meisels told her, among other things, that the Meiselses did not like to rent to singles. It is undisputed, however, that some of the Meiselses' prior tenants were in fact single. Although the jury could have reasonably inferred from this that the Meiselses had subsequently changed their minds about renting to unmarried people, another reasonable inference that can be deduced from this testimony is that the Meiselses wanted to discourage blacks from applying for a lease. From this alone, it is clear that there is evidence supporting the jury's finding with respect to unlawful discrimination.

■ There is also evidence supporting the jury's award of $3,000 in actual damages to the plaintiffs.[3] The record indicates that during the month the plaintiffs moved they were required to pay rent on the apartment they were leaving as well as the apartment they had found after being rejected by the Meiselses. At trial, Thronson testified that had they moved into the Meiselses' apartment as planned they would have been free to sublet their old apartment and thereby avoid having to pay rent on two separate dwellings. The plaintiffs were also necessarily inconvenienced and forced to expend additional time, effort and money in searching for a new apartment after being rejected by the Meiselses. Finally, the plaintiffs testified that they had incurred mental anguish and emotional distress as a result of Mr. Meisels's comment that he refused to rent to a "mixed couple." Although Meisels denied making the statement, and argued that in any

---

**3.** The jury also awarded the plaintiffs $8,000 in punitive damages. Apart from failing to raise a sufficiency challenge to this award in the district court, the Meiselses also failed to raise a timely challenge to the award on appeal. In their initial brief, the Meiselses do not directly attack the award of punitive damages, and we refuse to divine such a challenge from one or two phrases made in passing which only arguably raise the issue. *See Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511–12 n. 5 (7th Cir.1986). In their reply brief, the Meiselses do go into some depth to attack the award of punitive damages. Nonetheless, it is axiomatic that arguments raised for the first time in a reply brief are waived. *See In re Peter Bear*, 789 F.2d 577, 579 (7th Cir.1986).

event the plaintiffs' interpretation of it as a racial slur was unfounded, the jury was free to believe otherwise.

Based on the above, it is obvious that there is at least some evidence supporting the jury's finding that the Meiselses' decision to reject the plaintiffs as tenants was motivated by unlawful racial animus and that the plaintiffs suffered damages as a result of this rejection. The fact that there is other evidence favorable to the Meiselses, such as Thronson's check being returned unpaid, is immaterial. The Meiselses failed to raise the sufficiency issue in the district court and should not now complain if the standard of review they face is extremely deferential to the plaintiffs. Our examination of the record indicates that there is evidence supporting the jury's verdict and that upholding that verdict would not result in a miscarriage of justice. Accordingly, the jury's verdict must stand.

### III.

■ Apart from arguing that the verdict should be set aside, the Meiselses also contend that they are entitled to a new trial because of several erroneous evidentiary rulings made by the district court. The Meiselses first claim that the trial court erred in admitting evidence relating to the plaintiffs' financial status. The Meiselses contend that the evidence is irrelevant because they had no knowledge of it when the plaintiffs' rental application was rejected. Even conceding that the evidence may have some relevance, the Meiselses contend that it was nonetheless improperly admitted since its probative value is outweighed by its prejudicial effect.

It is well-established that "[b]ecause decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court, we will not reverse such a determination on appeal unless it constituted a clear abuse of discretion." *Public Service Co. of Indiana v. Bath Iron Works Corp.*, 773 F.2d 783, 787 (7th Cir.1985). After reviewing the record in the present case, we do not believe that the trial court erred in admitting the evi-

dence relating to the plaintiffs' financial status. Pursuant to Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Meiselses maintain that because they had *no knowledge of the evidence showing the state of the plaintiffs' finances* when the rental application was rejected, this evidence has no relevance to the present action. It is uncontested, however, that at trial Mr. Meisels testified that the plaintiffs' application was rejected because they lacked the financial resources to meet the rental obligations. As a result of Mr. Meisels's testimony the evidence regarding the plaintiffs' financial status became relevant. Although the Meiselses did not seek this evidence out before rejecting the plaintiffs' application, the evidence was nonetheless relevant to rebut Mr. Meisels's assertion that the plaintiffs would be incapable of paying the necessary rent. The district court did not, therefore, abuse its discretion in admitting this evidence as relevant.

Even conceding the relevance of this evidence, the Meiselses argue that the trial court should have excluded it on grounds that its probative value was substantially outweighed by its prejudicial effect. Under Fed.R.Evid. 403, evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." For purposes of Rule 403, "[i]t is well settled that evidence is unfairly prejudicial only if it 'will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented....'" *Cook v. Hoppin,* 783 F.2d 684, 689 (7th Cir.1986) (quoting *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir.1985)). For their part, however, the Meiselses fail to present any reason supporting their contention that admission of the plaintiffs' financial evidence would lead the jury to reach a result on an improper basis. In the absence of anything more than a bare as-

sertion of unfair prejudice, we can only conclude that the district court did not abuse its discretion in admitting this evidence.

■ The Meiselses next argue that the trial court abused its discretion in admitting the evidence regarding the testers' conversations with Mrs. Meisels. Before reaching the question of whether the district court abused its discretion in admitting the evidence, however, we must first ascertain whether the Meiselses have preserved the alleged error for appeal. The plaintiffs contend that by failing to object to the admission of the evidence at trial, even though they filed a motion *in limine*, the Meiselses have waived the opportunity to challenge this ruling on appeal. We disagree. Fed.R.Evid. 103(a)(1) requires that a timely objection to the admission of evidence be made in order to preserve the right to challenge such admission on appeal. By seeking, albeit unsuccessfully, to exclude the evidence by filing a motion *in limine* the Meiselses have sufficiently preserved the issue for appeal. *See Cook,* 783 F.2d at 691 n. 2.

■ Although we have jurisdiction to consider the issue, we nonetheless reject the Meiselses' argument that the district court erred in admitting Mrs. Meisels's statements. They maintain that "Mrs. Meisels is a nominal party to this suit as co-owner with [Mr. Meisels] of the premises in which the apartment is located, rendering admissions made by her, if any, inadmissible." We find this argument unpersuasive. First, there is nothing in the record which would indicate that Mrs. Meisels ever sought to have the action against her dismissed on grounds that she was only a nominal party as opposed to a real party in interest. *See* Fed.R.Civ.P. 17(a). Moreover, even if we assume that Mr. Meisels had sole control with respect to the final decisions in renting the apartment, this would not impact upon the admissibility of his wife's statements. Mrs. Meisels was concededly a co-owner of the property and was active in showing the apartment to prospective tenants. In essence, Mrs.

Meisels was at the very least an agent for her husband in the rental business. In this situation, general agency law would hold the principal liable for actions of his agent. *See Friendship Medical Center, Ltd. v. Space Rentals,* 62 F.R.D. 106, 112 (N.D.Ill. 1974) (noting that in Illinois "[t]he acts of an agent are considered in law to be those of the principal."). Mr. Meisels is not, therefore, in a position to challenge the admissibility of his wife's statements against him. *See, e.g., Sladen v. Girltown, Inc.,* 425 F.2d 24, 25 (7th Cir.1970). Under these circumstances, we conclude that the district court did not abuse its discretion in admitting this evidence.

■ We also reject the Meiselses' contention that the court should have excluded Mrs. Meisels's statements under Rule 403 on grounds that their prejudicial effect outweighed their probative value. Simply because evidence is detrimental to one party does not make it unfairly prejudicial for purposes of Rule 403. "By its very nature ... '[r]elevant evidence is inherently prejudicial' to one side or the other involved in litigation." *Cook,* 783 F.2d at 689 (quoting *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979)). As we noted above, the relevant inquiry is whether *unfair* prejudice was involved which led the jury to resolve the case on an improper basis. *See* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403[03], at 403-33-39 (1985) ("Evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case.") (footnotes omitted). Again, the Meiselses present no basis upon which we could find that Mrs. Meisel's statements were unfairly prejudicial in that they led the jury to reach its verdict on an improper basis. We are therefore left to conclude that the district court did not abuse its discretion in allowing this evidence to go to the jury.

Finally, the Meiselses contend that the district court abused its discretion in admitting testimony that Mr. Meisels rejected the plaintiffs' rental application because they were a "mixed couple." The district court admitted the evidence, but instructed the jury that the evidence was relevant only with respect to the damages the plaintiffs incurred (*i.e.*, the mental anguish, humiliation and emotional distress suffered as a result of the allegedly racist comment). *See* Fed.R.Evid. 105. The Meiselses contend that even with the limiting instruction this evidence was unduly prejudicial and therefore should have been excluded. Presumably, the Meiselses' argument is premised on a belief that without the admission of the "mixed couple" statement the jury would not have concluded that they acted with unlawful racial animus in rejecting the plaintiffs' rental application. For their part, the plaintiffs argue that the issue has been waived since the Meiselses failed to preserve their objection for appeal.

After reviewing the record, even assuming that the objection was properly preserved, we conclude that the district court did not abuse its discretion in admitting testimony regarding the "mixed couple" statement. Although the Meiselses argue that the statement was unduly prejudicial, our examination of the record indicates that the plaintiffs introduced independent testimony showing that the Meiselses rejected their rental application as a result of unlawful racial animus. In light of this independent testimony, we do not believe that admitting the "mixed couple" statement was unfairly prejudicial. Moreover, throughout the trial, the district court reminded the jury that this evidence was admissible solely for the purpose of proving damages. In fact, the trial judge gave the following limiting instruction before allowing the case to go to the jury:

> In this case, you will ... recall that I instructed you that certain evidence was admitted only as it related to the question of damages. When I instructed you that [an] item of evidence has been admitted for [a] limited purpose, you must consider it only for that limited purpose and for no other.

Given both the numerous times the trial judge admonished the jury regarding the proper use of the "mixed couple" statement and the fact that there was substantial independent testimony regarding the Meiselses' motivation for rejecting the plaintiffs as tenants, we do not believe that the district court abused its discretion in admitting the "mixed couple" statement into evidence.

### IV.

For the reasons stated above, the judgment of the district court is

Affirmed.