**James GOODEN, Plaintiff–Appellee,**

v.

**Michael V. NEAL, et al., Defendants–Appellants.**

No. 92–2524.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1993.

Decided Feb. 7, 1994.

Order Denying Reinstatement of Cross–Appeal Feb. 25, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 7, 1994.

Abraham N. Goldman, Oregon House, CA (argued), Steven Ackerman, Law Offices of Steven Ackerman, Chicago, IL, for plaintiff-appellee.

Robert G. Toews, Office of Atty. Gen., Chicago, IL (argued), for defendants-appellants.

Before POSNER, Chief Judge, and LAY[†] and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

As James Gooden tells the story, the truth was more than the warden could bear. Promoted to lieutenant and placed in charge of the internal affairs unit of the Danville Correctional Center in August 1986, Gooden started digging. His performance won accolades, including an "employee of the month" award while he was a member of the unit but not yet its head. The praise-filled evaluations continued after his promotion. Yet after turning up abuses by fellow guards, such as their performing favors for gang leaders (presumably for compensation), he found his superiors unwilling to listen. Despite enough information to start a criminal investigation of corruption—information he supplied to the local prosecutor—nothing happened within the prison. Instead of putting out the fire, the warden switched off the alarm. One morning in March 1987 Gooden reported for work at internal affairs only to be told to "turn in his keys, take his name plate and not come back." Reassigned to ordinary guard duty, he did not take the hint. In January 1988 he was assigned to perimeter duty and required to trudge around the

[†] Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation.

prison in snow and cold; when not marching, he was posted to an unheated guard tower. After the assistant warden refused to provide him with a winter coat for his tour in the tower, another correctional officer refused to let him back into the prison, showing him a memo forbidding his entry into the prison unescorted. Gooden quit.

As Warden Neal tells the story, James Gooden was more than anyone could bear. Promotion to a desk job left Gooden at sea, edgy, and defensive, a textbook example of the Peter Principle. He saw wrongdoing in the most innocuous events and committed the bureaucrat's cardinal sin of barging into another employee's jurisdiction despite a direct order to respect the division of authority. He got so overwrought that he couldn't take a joke. Another guard circulated a memo in Gooden's name canceling Christmas. Gooden became livid and started testing all of the prison's typewriters in an attempt to identify the prankster—as if he were trying to use the Pumpkin Papers to find out whether Whittaker Chambers was telling the truth about Alger Hiss. So the warden returned Gooden to the last job he had done well: guard. Normal rotation had him marching through sleet.

■ The tales have some overlap: Gooden does not deny the typewriter incident, and the warden concedes telling Gooden to keep his nose out of some areas where, Gooden says, he smelled a rat. By and large, however, both the stories and their legal implications are diametrically opposed. If Gooden is right, and he was constructively discharged for discovering and speaking to the prosecutor about criminal conduct by other guards, then the persons responsible for these events violated the first amendment.[††] If Warden Neal is right, and Gooden is an irascible busybody who roiled the prisoners and hampered the work of other employees, then sending Gooden to the prison's equivalent of Siberia (thus inducing him to quit) is more supportable—for, even if the methods the warden used were poor public administration, a constructive discharge motivated by considerations other than speech does not violate the first amendment. Cf. *St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 658–60 (7th Cir.1991) (en banc); *Benzies v. Illinois Department of Mental Health,* 810 F.2d 146 (7th Cir.1987).

As the district judge saw matters, the jury in this action under 42 U.S.C. § 1983 had to choose between two stories. Gooden was either a whistleblower forced out because of his speech or a frazzled bureaucrat in over his head. There was at least one more possibility: a little of each. Defendants' lawyer asked for a charge based on *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). He wanted the judge to tell the jury that, even if the defendants retaliated for Gooden's speech, they prevail if they would have forced his resignation for reasons unrelated to his speech. Counsel planned to make a dual-motive argument in closing. The judge declined to give a *Mt. Healthy* instruction and told the jurors that if Goo-

---

[††] Defendants do not deny that reports of crime by public employees are speech on a matter of public concern within *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). We therefore need not decide whether, and if so how far, the concession is correct. Cf. *Feldman v. Bahn,* 12 F.3d 730 (7th Cir.1993). The claim of official immunity, which has succeeded in many *Pickering* cases, see *Greenberg v. Kmetko,* 922 F.2d 382 (7th Cir. 1991); *Benson v. Allphin,* 786 F.2d 268 (7th Cir.1986), comes too late. Although it is an affirmative defense, which ordinarily is raised and resolved before trial, we have held that district judges may act favorably on immunity claims raised for the first time in mid-trial by motion for directed verdict (now a motion for judgment as a matter of law, see Fed.R.Civ.P. 50(a)), see *Rakovich v. Wade,* 850 F.2d 1180, 1204 (7th Cir.1988) (en banc), but have not excused defendants from the procedural requirements of such motions. Defendants failed to list immunity as an issue in the pretrial order, taking it off the trial agenda. What is more, a contention rooted in the facts of a case may not be raised for the first time after trial; it must be raised during trial. A motion properly made during trial may be "renewed" after trial. Fed. R.Civ.P. 50(b). Defendants did not rely on immunity before or during trial; the subject first arose in post-trial practice. That is too late. E.g., *McGee v. Bauer,* 956 F.2d 730, 733–34 (7th Cir.1992); *Thronson v. Meisels,* 800 F.2d 136, 139 (7th Cir.1986); *McKinnon v. Berwyn,* 750 F.2d 1383, 1387–90 (7th Cir.1984).

17 Fed.3d–22

den's speech was a "motivating factor" they were to return a verdict in his favor. The jury did so, awarding damages of $375,000. The judge later added almost $200,000 in attorneys' fees. In response to a post-trial motion the judge wrote: "If the protected speech was a motivating factor and a constitutional violation, the fact that the defendants would have done what they did anyway, without being motivated by the protected speech, is not germane to the question of liability." Although defendants relied heavily on *Mt. Healthy,* the judge did not cite or discuss that opinion.

■ The district court's conclusion that an employer violates the first amendment when speech is a "motivating factor" even if "the defendants would have done what they did anyway" tracks an approach the Supreme Court disapproved in *Mt. Healthy.* The district court in that case concluded that "[i]f a non-permissible reason, e.g., exercise of First Amendment rights, played a substantial part in the decision not to renew [employment]— even in the face of other permissible grounds—the decision may not stand". 429 U.S. at 284, 97 S.Ct. at 574. The Court replied:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in [an employment] decision ... could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. The difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision ... and does indeed play a part in that decision— even if the same decision would have been reached had the incident not occurred. The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct.

*Id.* at 285–86, 97 S.Ct. at 575. The Court devised a burden-shifting approach: if the employee shows by a preponderance of the evidence "that his conduct was a 'substantial

factor'—or, to put it in other words, that it was a 'motivating factor' in the [employer's] decision" then the burden shifts to the employer to establish "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576. (footnote omitted). The district court's conclusion that when protected speech is a "motivating factor" what would have happened in the absence of that speech is "not germane to the question of liability" is accordingly untenable. The district court may have confused the standards *Mt. Healthy* establishes for constitutional litigation with the standards in some other kinds of employment litigation. See 42 U.S.C. § 2000e–2(m) (added by the Civil Rights Act of 1991). Cf. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Whatever may be the case under labor and civil rights statutes, *Mt. Healthy* establishes the approach for litigation under the first amendment.

At oral argument the question arose whether *Mt. Healthy* is limited to cases in which an employer *concedes* basing its decision in part on protected speech. Although the employer made such a concession in *Mt. Healthy,* nothing in the Court's rationale depends on that fact. Indeed, if the employer's concession were vital, one wonders why the Court said that the plaintiff bears the initial burden of *proving* that protected speech is a motivating factor. Decisions in this circuit since *Mt. Healthy* apply its approach to circumstances in which employers took the same tack as Warden Neal: denying that they reacted adversely to the employee's speech and insisting that, if the jury nonetheless concludes that speech played a role, other considerations would have produced the same decision anyway. E.g., *Rakovich v. Wade,* 850 F.2d 1180, 1188–99 (7th Cir.1988) (en banc) (concluding that defendant prevailed under *Mt. Healthy* because plaintiff had not established that protected speech was a motivating factor); *Greenberg v. Kmetko,* 840 F.2d 467, 474–75 (7th Cir.1988) (en banc) (directing district court to give a *Mt. Healthy* instruction in a case in which the

defendants considered plaintiff's speech but denied that the speech was protected by the Constitution).

■ Many defendants do not want *Mt. Healthy* instructions and prefer to ask an either-or question of the jury. This is especially so when, as in *Greenberg* and *American Postal Workers Union v. United States Postal Service*, 830 F.2d 294, 311 n. 28 (D.C.Cir.1987), the employer concedes taking adverse action on the basis of an employee's speech but contends that the speech was not protected by the first amendment. *Mt. Healthy* is something of a misfit in such circumstances (although *Greenberg* relied on it). When, however, the plaintiff says that the adverse decision was based on speech, and the defendant says that the decision was based on something else, the jury should be told what to do if it concludes that the employer had both motives. *Mt. Healthy* gives the jury that essential information.

■ The evidence was not so overbalanced that the error can be called harmless. Instructional error of this kind would be harmless only if the evidence so favored Gooden that a jury could not find by a preponderance of the evidence that the constructive discharge was attributable to matters other than protected speech. The district judge, who submitted the case to the jury, did not think the evidence so lopsided. Gooden had a lot going for him—the awards and letters of praise, the odd manner of his removal, the accumulation of what appear to be trumped-up charges after March 1987 to justify assigning a lieutenant as a regular guard, the testimony of Charles Newman (a founding editor of *Criminology*) that Gooden behaved appropriately and that nothing in his personnel file or the records of his investigation reflected otherwise, and Gooden's own testimony that one of the defendants told him that he had been banished for "starting to make waves within the institution." But the defendants testified that they viewed Gooden's behavior as erratic and insubordinate, and a prison is enough like a military institution that jurors could believe that a subordinate *viewed* as a troublemaker is on the way out no matter what he said (and no matter whether the view is accurate). De-

fendants will have an uphill fight on this record, even with a properly instructed jury, but they are entitled to have the jury's decision on the factual questions rather than ours.

■ Gooden raised a state-law claim under the supplementary jurisdiction. Illinois encourages reports of crime and forbids employers to retaliate against employees who make such reports. 20 ILCS 415/19c.1; *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Belline v. K–Mart Corp.*, 940 F.2d 184 (7th Cir.1991). The district court removed this claim from the jury's consideration on a motion by Gooden that the court encouraged him to make, believing that it was redundant in light of the first amendment theories. As this opinion shows, however, the court's belief is incorrect. To prevail under state law Gooden did not have to establish that his reports were protected speech, and the tort of retaliatory discharge in Illinois has not developed in precisely the same way as constitutional torts governed by *Mt. Healthy*. State and federal theories are distinct; Gooden could win under one and lose under the other. At any new trial Gooden therefore should have the opportunity to present both theories if he desires.

REVERSED AND REMANDED.

LAY, Circuit Judge, dissenting.

I must respectfully dissent.

The vacation of the judgment and remand for a new trial create multiple degrees of unfairness. In the immediate case, a defendant reaps gain by claiming error in the trial court's refusal to instruct on a factual premise not involved in the case. For employers in general, however, the victory is certainly a Pyrrhic one. Assuming the majority's unprecedented ruling withstands further review, employment cases involving the First Amendment will require employers, in every case, to assume the burden of proving that their employment decisions were *not* based on the exercise of their employees' First

Amendment rights. This new rule[1] flows from a misapplication of the Supreme Court's rulings in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Regardless of whether an employer is accused of retaliating against an employee for his or her exercise of the right of free speech, or of firing or demoting an employee because of his or her race or gender, one of two factual scenarios is involved. These scenarios have become commonly referred to as "pretext" and "mixed" or "dual" motive cases. Where pretext is implicated, the trier of fact is faced with an "all or nothing" situation. For example, the employee claims that she was fired as a result of her protected speech or for racial reasons, while the employer contends that such factors had nothing to do with the firing. One or the other is telling the truth, and the trier of fact must choose.

Pretext cases are governed by the *McDonnell Douglas/Burdine* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under *McDonnell Douglas/Burdine*, the employee has the burden of establishing a prima facie case, then the employer has the burden of presenting a legitimate, nondiscriminatory reason for its action, and finally the employee has the opportunity to show that the employer's explanation is merely a pretext. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *St. Mary's Honor Center v. Hicks*, —— U.S. ——, —— – —— 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The employee retains the burden of persuasion at all times. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2747. The employer merely has the burden of production once the employee has established a prima facie case. The employer does not have to prove that its actions were motivated by the legitimate, nondiscriminatory reasons. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

Mixed-motive cases arise when an employer admits that considerations of the employee's race or protected speech, for example, played a part in the employer's decision, but the employer claims that because of other, legitimate considerations, it would have reached the same employment decision anyway. Such a situation was first addressed by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* involved a public school teacher who claimed he had been discharged for exercising his free speech rights under the First Amendment. In refusing to rehire the teacher, the school board based its decision on two incidents: the teacher phoned a radio station about a school matter, and the teacher made obscene gestures towards female students. *See id.* at 282–83, 97 S.Ct. at 573–74. The district court made a finding of fact that the phone call to the radio station was " 'clearly protected by the First Amendment.' " *Id.* at 283, 97 S.Ct. at 574.

---

1. Prior to *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Seventh Circuit applied *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), to all First Amendment political affiliation cases. *See McMillian v. Svetanoff*, 878 F.2d 186, 190 n. 3 (7th Cir.1989) (Flaum, J.). In *Price Waterhouse*, the Supreme Court applied the *Mt. Healthy* framework to a Title VII case; thus, *Mt. Healthy* clearly is not limited to First Amendment cases. *See id.* The Supreme Court distinguished between pretext cases, where the *McDonnell Douglas/Burdine* framework applies, and mixed-motive cases, where *Mt. Healthy* applies. *See id.;* *Price Waterhouse*, 490 U.S. at 247 n. 12. In light of the Supreme Court's distinction, this court recognized that it was now questionable whether *Mt. Healthy* should apply to all political discrimination cases and acknowledged that perhaps *Mt. Healthy* applies only to mixed-motive political discrimination cases, and *McDonnell Douglas/Burdine* applies to pretext political discrimination cases. *McMillian*, 878 F.2d at 190 n. 3. The *McMillian* court left for another day the decision on this question, and today this court reaches the untenable conclusion that *Mt. Healthy* applies to all First Amendment cases, regardless of whether they involve pretext or mixed motive.

The district court determined, and the court of appeals agreed, that the teacher's exercise of his right of free speech played a substantial part in the board's refusal to rehire him, and ordered that the teacher be reinstated. As a result of the reinstatement, the teacher would receive tenure. The school board was denied the opportunity to show that, because of other conduct engaged in by the teacher, it would have refused to rehire the teacher even if he had not spoken on the radio. *See id.* at 286, 97 S.Ct. at 575. The rule enunciated by the district court had the effect of enabling someone who was about to be fired to retain his or her job simply by also exercising his or her right of free speech. The Supreme Court did not wish to "place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing," *id.* at 285, 97 S.Ct. at 575, and reasoned that such an employee "ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record." *Id.* at 286, 97 S.Ct. at 575.

For this reason the Supreme Court held that where mixed motives are implicated, once an employee has shown that his or her constitutionally protected speech was a "substantial" or "motivating factor" in the adverse treatment of the employee by the employer, the burden shifts to the employer to prove "by a preponderance of the evidence that it would have reached the same decision as to [the employee] even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576. Thus, where mixed motives are involved, the burden of persuasion, not simply the burden of production, shifts to the em-

ployer. In a mixed-motive situation, the employer has admitted that it considered illegitimate factors, and thus it is fair to put a heavier burden on the employer as compared to the pretext situation, where the employer denies any wrongdoing. *See Price Waterhouse*, 490 U.S. at 271, 109 S.Ct. at 1801 (O'Connor, J., concurring) (employer should not be "entitled to the same presumption of good faith where there is direct evidence that it has placed substantial reliance on factors whose consideration is forbidden by Title VII").

The majority acknowledges the facts involved in *Mt. Healthy*, but reasons that the consideration by the school board of permissible and impermissible factors was not of importance to the *Mt. Healthy* decision.[2] According to the majority, the Supreme Court did not rely on the mixed-motive situation in developing the *Mt. Healthy* framework. This reading of *Mt. Healthy* ignores the plain language of the case. If *Mt. Healthy* had involved a pretext situation, the Supreme Court likely would not have reversed. It was precisely *because* the school board admitted that it considered the phone call to the radio station, but argued that it would have reached the decision not to rehire the teacher even without the phone call, that the Court reversed the case. If the question had simply been whom to believe between the school board and the teacher, there would have been no need for a new trial.

In *Mt. Healthy* the Court indicated that the long-term consequences of tenure are so "significant" that it could not approve a rule that would prevent the school board that *"considered constitutionally protected conduct in deciding not to rehire [the teacher],*

---

**2.** This overlooks the Supreme Court's discussion of the district court's finding. The district court made the following conclusions on this aspect of the case:

"'1) If a non-permissible reason, *e.g.,* exercise of First Amendment rights, played a substantial part in the decision not to renew— even in the face of other permissible grounds— the decision may not stand (citations omitted).

"'2) A non-permissible reason did play a substantial part. *That is clear from the letter of the Superintendent immediately following the Board's decision, which stated two reasons—the*

one, the conversation with the radio station clearly protected by the First Amendment. A court may not engage in any limitation of First Amendment rights based on 'tact'—that is not to say that the 'tactfulness' is irrelevant to other issues in this case.'"
*Mt. Healthy*, 429 U.S. at 284–85, 97 S.Ct. at 574– 75 (emphasis added). The district court further stated that "'[i]n fact, as this Court sees it and finds, both the Board and the Superintendent were faced with a situation in which there did exist in fact reason ... independent of any First Amendment rights or exercise thereof, to not extend tenure.'" *Id.* at 285, 97 S.Ct. at 575.

*from attempting to prove to a trier of fact that quite apart from such conduct [the teacher's] record was such that he would not have been rehired in any event." Id.* at 286 (emphasis added). Thus, contrary to the majority's reasoning, the Court in restructuring the burden of proof did consider the fact that the employer had a mixed motive. The rationale of *Mt. Healthy* was that:

> [a] rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.... The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct.

*Id.* at 285–86, 97 S.Ct. at 575.

The majority interprets *Mt. Healthy* and free speech cases to be distinct from all other employment cases under Title VII or § 1983. This kind of categorization does not comport with logic. Although *Mt. Healthy* arose in the context of the First Amendment, it has not been limited to First Amendment situations. Indeed, in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), a mixed-motive case involving gender discrimination, the Supreme Court applied the same analysis that was developed in *Mt. Healthy*.[3] The plaintiff in *Price Waterhouse* claimed that she was denied partnership in an accounting firm because of gender discrimination. The district court found that some of the partners' remarks, in evaluating the plaintiff, stemmed from impermissible gender stereotypes. *Id.* at 235–36, 109 S.Ct. at 1782–83.[4] The district court also found, however, that the accounting firm legitimately emphasized interpersonal skills and had not fabricated as a pre-

text for discrimination its complaints about the plaintiff's interpersonal skills. *Id.* at 236, 109 S.Ct. at 1783.

Of critical importance to the Supreme Court in deciding the standard to be applied in *Price Waterhouse* was the fact that it was a mixed-motive situation. *See id.* at 240 n. 6, 109 S.Ct. at 1785 n. 6 (comparing *Price Waterhouse* to *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976), the Court pointed out that *"McDonald* did not involve mixed motives. This difference is decisive in distinguishing [*Price Waterhouse* ] from those involving 'pretext.' "). Justice Brennan in the plurality opinion stated:

> Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a "pretext" case or a "mixed-motives" case from the beginning in the District Court; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both. Discovery often will be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the decision against her. At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives.

*Id.* at 247 n. 12, 109 S.Ct. at 1788 n. 12.

Similarly, Justice White in his concurrence stated that "[t]he Court has made clear that 'mixed-motives' cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* and *Burdine*. In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision.'" *Id.* at 260, 109 S.Ct. at 1796 (quoting *NLRB v. Transportation Management Corp.*, 462 U.S. 393,

---

**3.** *See also Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977) (in a decision handed down the same day as *Mt. Healthy* the Court found the *Mt. Healthy* standard applicable to a claim of racial discrimination in the denial of a rezoning proposal).

**4.** For example, one partner described the plaintiff as "macho," another suggested she take " 'a course at charm school,' " a third told her that to improve her chances for partnership she should " 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.' " *Price Waterhouse,* 490 U.S. at 235, 109 S.Ct. at 1782 (quoting the district court opinion).

400 n. 5, 103 S.Ct. 2469, 2473 n. 5, 76 L.Ed.2d 667 (1983)).

The relevant distinction is between mixed-motive and pretext cases, not between discrimination involving the First Amendment and all other types of discrimination. The D.C. Circuit Court of Appeals recognized this distinction in *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 830 F.2d 294 (D.C.Cir.1987) [hereinafter *APWU* ]. The plaintiff was a postal employee who was fired after writing an article in a union newsletter, in which he stated that he had read third class mail and found petitions mailed by a United States Congressman seeking support for "right to work" (anti-union) legislation. *Id.* at 297. The Postal Service contended that it fired the plaintiff for allegedly violating Postal Service regulations regarding reading mail. The district court found, and the D.C. Circuit agreed, that the Postal Service's reason was merely a pretext; the plaintiff offered a plausible explanation of his statements in the newsletter column, but the Postal Service fired the plaintiff "on the spot" without further investigation. *Id.* at 311.

The D.C. Circuit reasoned that because *APWU* involved a pretext situation, the full *Mt. Healthy* test was not appropriate.[5] The *APWU* court held that the plaintiff had to prove that his protected speech was a motivating factor in the Postal Service's decision to fire him. *Id.* at 310–11. The court did not, however, proceed to shift the burden to the Postal Service to show that it would have fired the plaintiff in the absence of his protected speech. The D.C. Circuit reasoned that the significance of the fact that pretext, and not mixed motive, was involved "is that in this case, the court is not asked to reach the third part of the *Mt. Healthy* analysis; if [the plaintiff] shows that his speech was constitutionally protected and that it was a substantial or motivating factor in the decision to fire him, he must prevail." *Id.* at 311 n. 28.

The Second Circuit Court of Appeals has similarly recognized that pretext analysis as developed in *McDonnell Douglas* and *Burdine* is not limited to Title VII cases but "is fully applicable to constitutional claims where the issue is whether an improper motive existed." *Howard v. Senkowski*, 986 F.2d 24, 27 n. 2 (2d Cir.1993). Similarly, mixed-motive analysis also applies in non-constitutional settings. *Id.* at 26 n. 1 (citing, e.g., *Price Waterhouse*, 490 U.S. at 244–47, 109 S.Ct. at 1787–89; *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 403, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983) (National Labor Relations Act)).

The *Howard* court was faced with the question of what type of analysis to apply to a *Batson* challenge where the prosecutor conceded that race was a factor in his peremptory challenge decisions, but indicated that other factors were more significant. *Id.* at 25. The trial court applied the *McDonnell Douglas/Burdine* pretext framework, found that the prosecutor had articulated legitimate explanations which were not pretextual, and concluded that the individual had not established purposeful discrimination by the prosecutor. *Id.* at 25–26. The Second Circuit decided, however, that because *Howard* involved mixed motive, a *Mt. Healthy* analysis should have been used instead. The critical distinction, as the Second Circuit sees it, is whether a pretext or mixed-motive situation is involved: the *Burdine* pretext analysis applies when "the issue is the all-or-nothing question of whether or not an impermissible consideration motivated the challenged action," whereas the *Mt. Healthy/Price Waterhouse* framework applies in mixed-motive scenarios. *Id.* at 27.

The Second Circuit recently faced, in a labor context, the argument that *Mt. Healthy* should apply to both pretext and mixed-motive situations. *See Holo–Krome Co. v. NLRB*, 954 F.2d 108 (2d Cir.1992). The court discussed the differences between pretext and mixed-motive cases, and then turned to the standards used in civil rights litigation.

---

**5.** The D.C. Circuit stated that "this case, unlike *Mt. Healthy,* is not a 'dual motive' case. The Postal Service does not contend that it *would have* fired [the plaintiff] for a permissible reason even in the absence of his protected speech; rather, it asserts that it *did* fire [the plaintiff] solely for the permissible reason that [the plaintiff] violated Postal Service regulations." *Id.* at 311 n. 28 (citations omitted).

*See id.* at 110. The Second Circuit did not distinguish between the framework to be used in civil rights and First Amendment cases; rather, it stated that *Burdine* applies to pretext cases and *Mt. Healthy* to mixed-motive cases. *Id.* The *Holo–Krome* court criticized the NLRB's position that *Mt. Healthy* should apply to both mixed-motive and pretext labor cases: "The Board's insistence that the two approaches need not be distinguished ignores the reality that they are different: pretext analysis determines what the true motivation actually was; dual motivation analysis determines what the employer's conduct would have been if the improper motivation had not been present." *Id.*

The majority's decision to shift the burden of persuasion to the employer, in *every* First Amendment case, is insupportable. It is incomprehensible why free speech cases will always place the burden of proof on the employers to show the legitimacy of discharge or other adverse employment decisions. Yet when race, gender, age, or nationality enter into the employment decision, the burden of persuasion will not be placed on the employer unless the plaintiff can prove that the employer had a mixed motive in reaching its decision. Under the majority's approach, *Mt. Healthy* ends up benefiting a plaintiff by placing him or her in a better position than other employees, simply because the claim made relates to the First Amendment rather than some other protected status. As a further consequence of today's decision, it seems that in all First Amendment cases the employee is relieved of the burden of showing pretextuality; the tra-

ditional burden of proof as to causation will have already been transferred to the employer at the pleading stage.[6]

The majority states that the district court did not discuss the *Mt. Healthy* standard. The district court clearly was aware, however, of the defendant's belated claim of mixed motive.[7] The district court pointed out to the defendants that they had not tried the case on a mixed-motive basis. Judge Baker ruled that the burden shifting part of *Mt. Healthy* did not apply.[8] There exists a basic principle that district courts apply in every instruction conference: Judges do not instruct on legal principles where factual proof to support the claim is absent. *See, e.g., Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1297 (10th Cir.1989) (error under federal law to give instruction when there is no evidence to support it); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 429 (Fed.Cir.1986) (although proffered jury instruction may be valid as an abstract proposition, it cannot be given where no evidence was produced at trial relating to it); *see also General Leaseways, Inc. v. National Truck Leasing Ass'n*, 830 F.2d 716, 725 (7th Cir.1987) (instructions must be viewed "in light of the allegations of the complaint, opening and closing arguments and the evidence of record"); *Rogers v. ACF Indus., Inc.*, 774 F.2d 814, 818 (7th Cir.1985) (party is entitled to have its theory of the case presented to the jury if there was evidence to support it).

The defendants did not try this case on a mixed-motive basis. From the opening statement and throughout the trial, they urged that they either did not know or did

**6.** Under the majority's rule, all First Amendment cases transfer the burden of proof to the employer to show that the employer would have made the same employment decision even in the absence of the protected conduct. Thus, at the pleading stage, as long as First Amendment violations are alleged, the burden will have already transferred, even in pretext cases. This is contrary to Justice Brennan's guidance in *Price Waterhouse*, where he recognized that it may not immediately be apparent whether a case involves pretext or mixed motive and that discovery may be necessary for the plaintiff to make this determination. *See Price Waterhouse*, 490 U.S. at 247 n. 12, 109 S.Ct. at 1788 n. 12. Now discovery is no longer necessary, for the burden has already transferred to the employer.

**7.** The defendants did not plead any "affirmative defense" that although speech may have been a motivating factor in the treatment of the plaintiff, his discharge would have occurred notwithstanding the employee's exercise of his free speech rights. The first time the defendants raised the *Mt. Healthy* claim was in the instruction conference at the close of all of the evidence.

**8.** Judge Baker responded to counsel's request for the full *Mt. Healthy* instruction by stating: "I don't disagree with all those hypothetical discussions of the law. Given proper facts and evidence they might have application, but, in this case, I rule that it does not."

not care that Gooden was going to the state's attorney. The defendants simply denied that Gooden's disclosure to the state's attorney had any impact whatsoever on their decisions. The defendants presented this as a pretext case, and the district court properly so instructed by eliminating the third prong of *Mt. Healthy*.

Under the circumstances, depriving the plaintiff of the verdict and ordering a new trial is totally unwarranted. The judgment of the district court, based on the jury verdict, should be affirmed.

### ORDER

Nos. 92–2524 & 92–2601

Feb. 25, 1994.

Gooden asks the court to reinstate his cross-appeal, No. 92–2601, which was dismissed for want of prosecution on the date the panel decided the principal appeal, No. 92–2524. The motion is denied.

Gooden insists that he did indeed prosecute the cross-appeal, by including Point IV in his brief, at pages 48–49. But the brief carries only docket No. 92–2524 in the caption and is described: "Brief of Plaintiff–Appellee." The caption lists Gooden as "Plaintiff–Appellee." There is no evidence in the caption or body of the brief that Gooden is pursuing appeal No. 92–2601.

Moreover, Gooden's motion contends that the function of the cross-appeal was to set up the argument that any retrial should include the claims under the pendent jurisdiction. Taking a cross-appeal was neither necessary nor appropriate for this purpose. Only a party aggrieved by the judgment may appeal, and Gooden was 100% successful. He was entitled to make clear his position about the terms of any remand without the need for a cross-appeal.

Although appeal No. 92–2601 stays dismissed, the court directs each side to bear its own costs. Gooden was indeed partly successful, not only in obtaining favorable terms of remand but also in fending off the defendants' argument for immunity—which, had the court adopted it, would have pro-duced judgment in defendants' favor without an opportunity for a second trial.