107 F.3d 874
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ruth WILHITE, Plaintiff-Appellant,
v.
Thomas ANDIS and Lori Schutz, Defendants-Appellees,
 No. 96-1954.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1997.
Decided Feb. 06, 1997.
 
 Before BAUER, KANNE and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Ruth Wilhite, an employee of the state of Indiana, brought this lawsuit against Thomas Andis and Lori Schutz, Wilhite's supervisors, alleging they took disciplinary action against her because she exercised her right to free speech guaranteed by the First Amendment to the Constitution. A jury heard the case and decided it in favor of Andis and Schutz. Wilhite appeals the district court's denial of her postjudgment motion for judgment as a matter of law against Andis and for a new trial against Andis.
 
 
 2
 Wilhite is a registered nurse who began working for the state of Indiana in 1966 at the Evansville State Hospital. In 1981 she transferred to the Evansville Psychiatric Children's Center (EPCC). In July 1987 Wilhite was fired for making "medication errors" (giving Thorazine to a patient contrary to a physician's order; not following proper procedure when she discovered that medication was missing from a patient drug package; improperly charting or improperly discontinuing Atarax when prescribed for a patient; and administering Halcion to two patients when Haldol was actually prescribed). A year later, however, the State Employees Appeals Committee (SEAC) reinstated Wilhite, finding that she was treated more harshly than other nurses who committed similar "medication errors." The SEAC reduced Wilhite's penalty to two reprimands and a 10-day suspension.
 
 
 3
 In January 1988, after she was fired but before her reinstatement, Wilhite and other EPCC employees filed a lawsuit against EPCC. The 1988 lawsuit was resolved by the entry of a consent decree in July 1990. By stipulation, the parties to this suit agree that the 1988 lawsuit was activity protected by the First Amendment.
 
 
 4
 Wilhite returned to work at EPCC in March 1989. Prior to her return, Andis had been appointed Superintendent of EPCC. In November 1989 Wilhite committed another "medication error" by giving a patient her medicine 2 hours later than the time ordered by the prescribing doctor. Andis consulted with several advisors who, based on Wilhite's position in the hospital's progressive disciplinary system, suggested that Wilhite's employment be terminated. Andis, however, decided to impose a 10-day suspension on Wilhite. Wilhite challenged the suspension and, again, the SEAC found the discipline too harsh and reduced the 10-day suspension to two reprimands. Wilhite also filed this lawsuit in 1991 alleging that Andis imposed the suspension in retaliation for her participation in the 1988 lawsuit, thereby violating her First Amendment right to free speech.
 
 
 5
 At trial, Wilhite presented evidence that, although other nurses committed similar medication errors, she was the only nurse Andis formally disciplined. She also presented evidence that Andis felt the 1988 lawsuit caused a severe disruption in the functioning at EPCC and that the error she committed--giving medication 2 hours late--is not considered a serious error.
 
 
 6
 But Andis denied imposing Wilhite's suspension in retaliation for her criticisms of policy and procedures at EPCC. Andis testified that he considered three factors in deciding Wilhite's sanction: the care and safety of the children; the hospital's potential liability; and Wilhite's status in EPCC's progressive disciplinary system (a series of penalties ranging from informal counseling to discharge).
 
 
 7
 At the close of evidence both parties moved for judgment as a matter of law. The district judge denied both motions, but he noted that Wilhite presented "barely" enough to get the case to the jury. The jury returned a verdict for Andis (and Schutz) on which the district court entered judgment. Wilhite filed a motion for reconsideration of her motion for judgment as a matter of law and, in the alternative, for a new trial, arguing that Andis presented "no evidence that [he] would have suspended her absent her participation in [the 1988] lawsuit." The district court denied Wilhite's motion, stating that her "contention is simply not true." Wilhite appeals.
 
 
 8
 We review a district court's denial of a motion for judgment de novo. Frazell v. Flanigan, 102 F.3d 877, 882 (7th Cir.1996); Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir.1996). In determining whether the trial evidence is sufficient to support the jury's verdict, we view the evidence in the light most favorable to, and resolve all conflicts in the evidence in favor of, the prevailing party. Frazell, 102 F.3d at 882; Emmel, 95 F.3d at 629. Ultimately, for a loser to win on appeal, we must decide that no rational jury could have found for the prevailing party. Emmel, 95 F.3d at 630.
 
 
 9
 When a government employee challenges an employment decision on First Amendment grounds, the employee bears the burden of showing by a preponderance of the evidence that the constitutionally protected activity was a motivating factor in that employment decision. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gooden v. Neal, 17 F.3d 925, 928 (7th Cir.), cert. denied, 115 S.Ct. 73 (1994). If the employee does this, the burden shifts to the employer to show by a preponderance of the evidence that the same decision would have been reached in the absence of the employee's protected activity. Mt. Healthy, 429 U.S. at 287; Gooden, 17 F.3d at 928. Whether the employer would have made the same employment decision absent the protected activity is a question of fact for the jury to decide. Gooden, 17 F.3d at 929; Perry v. Larsen, 794 F.2d 279, 283 (7th Cir.1986).
 
 
 10
 Wilhite contends that Andis presented no evidence that he would have suspended her absent her participation in the 1988 lawsuit and, therefore, that no rational jury could have returned a verdict in his favor. This position is not tenable because, as the district court correctly stated, it is not true. Andis testified that he did not consider Wilhite's participation in the 1988 lawsuit when deciding the appropriate action to take in response to the medication error. Further, he told the jury about the factors he did consider. This certainly constitutes sufficient evidence for a rational jury to find in favor of Andis. Wilhite's claim on this appeal is utterly without merit.
 
 
 11
 Wilhite also attacks the district court's denial of her motion for a new trial. We review a district court's decision denying a new trial for a clear abuse of discretion. Latino v. Kaizer, 58 F.3d 310, 314 (7th Cir.1995); Thomas v. United States, 41 F.3d 1109, 1120 (7th Cir.1994). A new trial is proper only if the jury verdict is against the weight of the evidence. Thomas v. United States, 41 F.3d 1109, 1120 (7th Cir.1994). However, "[this court] will not set aside the jury's verdict if there is a reasonable basis in the record which supports that verdict." Thomas, 41 F.3d at 1120 (quoting Allison v. Ticor Title Ins. Co., 979 F.2d 1187, 1196 (7th Cir.1992) (citations omitted)).
 
 
 12
 Here, Wilhite argues that she presented such persuasive and overwhelming evidence that Andis considered her constitutionally protected speech that no rational jury could possibly have found in his favor. In support of this assertion, Wilhite points to the evidence that no other nurse was formally sanctioned for medication errors (and no other nurse was involved in the 1988 lawsuit), that Andis had the option of not disciplining her, that Wilhite was a good and well-respected nurse, and that Andis believed the 1988 lawsuit had a devastating effect on EPCC. However, we do not weigh evidence or make credibility determinations. Those are tasks assigned to the jury, and the jury's decision on these matters will not be second-guessed. Thomas, 41 F.3d at 1121 ("We will not go back now and question [the jury's] credibility determination and apportionment of prevailing weight where sufficient evidence exists to support [the jury's] conclusions."). The jury obviously believed Andis, and that's the end of the case.
 
 
 13
 The judgment below is AFFIRMED.