JEFFERSON

v.

**UNITED STATES of America**

**No. 04 C 50291.**

United States District Court, N.D. Illinois.

Sept. 21, 2006.

Gerald E. Kubasiak, John A. Dienner, III, Manuel Jose Placencia, Kubasiak, Fylstra, Reizen & Rotunno P.C., Chicago, IL, Barbara Giorgi Vella, Vella, Sparkman, Wheeler & Lund, Rockford, IL, for Jefferson.

Glenn J. Melcher, U.S. Department of Justice, Washington, DC, for United States of America.

## STATEMENT

REINHARD, District Judge.

Before the court are cross-motions for summary judgment filed by plaintiff Charles E. Jefferson ("plaintiff" or "Jefferson") and defendant the United States of America ("Government"). Jefferson filed a one-count complaint against the Government seeking a refund of the federal employment and withholding taxes he paid. Pursuant to 26 U.S.C. § 6672(a) ("Section 6672"), the Internal Revenue Service ("IRS") has collected approximately $41,431.44 from Jefferson to satisfy a trust fund recovery assessment and interest thereon. The trust fund recovery assessment covered the New Zion Day Care Center's ("New Zion") unpaid federal income and Federal Employee Contribution Act ("FICA") taxes for its employees for the later three quarters of 2000 and the first two quarters of 2001 [April 1, 2000 through June 30, 2001]. For the reasons set forth below, the Government's motion for summary judgment is granted and Jefferson's motion for summary judgment is denied. The court upholds the $41,431.44 tax assessment against Jefferson and denies his request for a refund.

## I. Facts [1]

The facts in this case are undisputed, unless specifically noted. New Zion was a tax-exempt organization that provided day care services to children. Due to financial difficulties, New Zion closed in June 2001. From the early 1980's, until New Zion ceased its operations in June 2001, Jefferson served as the president of New Zion's board of directors. Jefferson's position as president of the board of directors was voluntary and he was not compensated for his almost twenty years of service. Velma Hayes ("Hayes") was the executive director of New Zion from approximately 1982 until June 2001. Hayes was in charge of the day-to-day operation of New Zion and was paid for her services.

Pursuant to the bylaws of New Zion, Jefferson and the other members of the board of directors were in charge of New Zion's control and management. According to Jefferson, he and the other board members "were responsible for the direction of the daycare." *See Pl.'s Dep* at 81. As a board member, Jefferson had the authority to direct or authorize payment of New Zion's bills, authorize payment of its federal tax deposits and determine its fi-

1. Jefferson moves to strike certain exhibits that the Government filed in support of its motion for summary judgment. Specifically, Jefferson moves to strike the Government's Exs. 5,7,8,10,14, 17 and 18. Jefferson's motion is denied as moot as to Exs. 7 and 8 and denied as to Exs. 5,10,14,17 and 18. The court did not rely on Exs. 7 and 8 in deciding the pending motions for summary judgment. The court did consider the fact that Jefferson secured a loan on behalf of New Zion, however, that fact became part of the record through Jefferson's deposition testimony, not Exs. 7 and 8. Ex. 14 is admissible because Jefferson's deposition testimony sufficiently authenticated it. The affidavits in Exs. 17 and 18 will be allowed and adequately authenticate Exs. 5 and 10. At the time the Government filed its motion for summary judgment, it was reasonable for it to conclude that the authenticity of Exs. 5 and 10 was not disputed. Therefore, the court exercises its discretion and finds that the affidavits are not time barred.

nancial policy. Jefferson admits that he was one of a number of signatories on New Zion's bank accounts and that he co-signed a limited number of checks issued by New Zion between 1998 and 2001. In August 2000, Jefferson co-signed two checks issued to the IRS. In 1998, Jefferson secured a loan on behalf of New Zion to cover delinquent tax payments. Jefferson was not involved in the day-to-day affairs of New Zion. Responsibility for New Zion's day-to-day affairs fell to its director, Hayes.

During Jefferson's tenure as board president, the board generally held monthly meetings. The monthly meetings continued through 2000. However, after March 2001, the board may not have met regularly. *See Pl.'s Dep* at 11. Hayes attended the meetings and provided the board members with a copy of her "director's report"[2] and a "financial report." Prior to 1999, Hayes generated the financial reports. Then, sometime in 1999, the board decided to retain the accounting firm of Lindgren Callihan & VanOsdol ("accounting firm") to generate New Zion's financial reports. *See Pl.'s Dep* at 27–28. The parties dispute the frequency with which the board actually received copies of the financial reports from the accounting firm. However, both parties concede that between April 2000 and June 2001 the board, including Jefferson, received financial reports, though the number is uncertain. The reports were generated monthly, and Hayes maintained a file with copies of all the financial reports at New Zion's office. Jefferson was aware of the file and had access to it. When the board received copies of the financial reports and director's reports, regardless of the frequency, Jefferson instructed the board mem-

bers to read those reports and they were accepted through a majority vote. *See Pl.'s Dep* at 113.

New Zion's tax problems first came to a head in February 1998. The Executive Director of the United Way attended New Zion's February 1998 board meeting and informed Jefferson and the other directors that, *inter alia*, New Zion was delinquent in its tax payments and was in jeopardy of losing its United Way funding. Thereafter, New Zion lost its United Way funding, in part, because of the unpaid taxes. After the 1998 tax delinquency, the board retained the above referenced accounting firm and ordered Hayes to pay any withholding taxes that were due and owing to the IRS. However, Jefferson has not presented any evidence that the board took steps or implemented procedures to insure that future taxes were actually paid. By 2000, New Zion's financial condition was precarious and it failed to pay income and FICA taxes for its employees from April 1, 2000 through June 30, 2001. That tax delinquency ultimately gave rise to the instant action.

## II. Legal Analysis

To succeed on a motion for summary judgment, the moving party must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering these cross-motions for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and must view all rea-

---

**2.** In their briefing, the parties raised immaterial disputes regarding the "director's reports." Those arguments are waived because

neither party provided the court with the deposition pages they relied on in support of their arguments.

sonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court first turns to Jefferson's motion for summary judgment. Jefferson makes three arguments in support of his refund request. Each argument fails. First, citing to section 904(b) of Public Law 104–168 ("Section 904(b)"), Jefferson argues that the Government should be barred from levying the disputed trust fund recovery assessment against him because the Government failed to provide the public, and him specifically, with information warning of the potential tax liability. The section Jefferson relies on is entitled "Public Information Requirements" and states, in pertinent part:

> (1) In general.—The Secretary of the Treasury ... shall take such actions as may be appropriate to ensure that employees are aware of their responsibilities under the Federal tax depository system, the circumstances under which employees may be liable for the penalty imposed by section 6672 of the Internal Revenue Code of 1986, and the responsibility to promptly report to the Internal Revenue Service any failure referred to in subsection (a) of such section 6672. Such actions shall include -

> (A) printing of a warning on deposit coupon booklets and the appropriate tax returns that certain employees may be liable for the penalty imposed by such section 6672, and

> (B) the development of a special information packet.

> (2) Development of explanatory materials.—The Secretary shall develop materials explaining the circumstances under which board members of tax-exempt organizations (including voluntary and honorary members) may be subject to penalty under section 6672 of such Code.

Such materials shall be made available to tax-exempt organizations.

▮ There is no dispute that the IRS has not developed any special information packets, or explanatory materials regarding possible penalties under Section 6672. However, Section 904(b) is not part of the actual amended language of Section 6672. Jefferson refers to the language of Section 904(b) as a "mandate," but concedes that he could not locate any case law addressing what effect, if any, such a "mandate" would have on the application of Section 6672. Without citing to any relevant law, Jefferson makes the argument that the Government's failure to comply with Section 904(b), precludes the Government from assessing any tax liability against Jefferson under Section 6672(a). However, the language of Section 904(b) does not place any restrictions on the application of Section 6672(a). It does not make the Government's ability to impose a penalty pursuant to Section 6672(a) contingent on it first developing and distributing the explanatory material referenced. Accordingly, the court finds no merit in Jefferson's argument that the Government is precluded from assessing any tax liability pursuant to Section 6672(a) because it has not complied with the language of Section 904(b).

▮ Jefferson's next argument is similarly unpersuasive. Jefferson argues that the language from an IRS policy statement and IRS announcement from 1996 somehow limit the Government's ability to assess tax liability under Section 6672(a). Jefferson is clearly grasping at straws in his attempt to recover the trust fund recovery assessment. Again, Jefferson fails to provide any case law citations in support of his position because none exist. To the contrary, it is well-established that rules adopted for the internal administration of the IRS are not for the protection

of the taxpayer and do not confer any rights upon the taxpayer. *In re Matter of Carlson*, 126 F.3d 915, 922 (7th Cir.1997)(citing *United States v. Mapp*, 561 F.2d 685, 690 (7th Cir.1977)).

Jefferson's final argument in support of his motion for summary judgment also fails. Jefferson argues that he is exempt from any penalty provided for in Section 6672(a) because he meets the requirements enumerated in Section 6672(e). Section 6672(e) states, in pertinent part:

> No penalty shall be imposed by subsection (a) on any unpaid, volunteer member of any board of trustees or directors of an organization exempt from tax under subtitle A if such member -
>
> > (1) is solely serving in an honorary capacity,
> >
> > (2) does not participate in the day-to-day or financial operations of the organization, and
> >
> > (3) does not have actual knowledge of the failure on which such penalty is imposed.

■ Jefferson clearly does not fall within the ambit of the Section 6672(e) exception because, *inter alia*, he was not solely serving in an honorary capacity as the president of the board of directors at New Zion. During his tenure as president of the board and during all times relevant to this action, Jefferson presided over the board's monthly meetings, reviewed and approved New Zion's financial statements and director's statements, and acted as a co-signatory on New Zion's bank accounts. Jefferson co-signed checks on behalf of New Zion and approved the hiring of an accounting firm to review New Zion's finances. As the president of the board of directors, Jefferson clearly played an active role in the management of New Zion and was not solely serving in an honorary capacity. Accordingly, Section 6672(e) is not applicable to the facts of this case.

Jefferson's motion for summary judgment is denied because the court finds that the Government was not barred from pursuing a tax assessment against Jefferson and Jefferson does not fall within the ambit of the Section 6672(e) exception.

■ Next, the court turns to the Government's motion for summary judgment. As stated above, the court finds that the Government had the authority to seek a tax assessment against Jefferson pursuant to Section 6672(a). However, in deciding the Government's motion, the court is now tasked with determining whether the Government's imposition of a $41,431.44 assessment against Jefferson was correct. The court must presume that it was correct and Jefferson bears the burden of production and persuasion in showing that the assessment was in error. *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir.1994). The parties do not take issue with the amount of the assessment, or with the fact that New Zion did not remit withheld payroll taxes for its employees for the later three quarters of 2000 and the first two quarters of 2001. The only dispute is whether the Government properly held Jefferson responsible for New Zion's tax deficiency pursuant to 26 U.S.C. § 6672(a).

For purposes of Section 6672(a), a person is liable for a tax assessment if the person is "responsible" for paying the assessment and "willfully" fails to pay it. *United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir.1997). The term "responsible" does not focus on whether a person "could himself have paid the taxes, rather it focuses on whether the taxpayer could have impeded the flow of business to the extent necessary to prevent the corporation from squandering the taxes it withheld from its employees." *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir.1994). Whether the person actually exercised the power to

impede is irrelevant; the fact that he possessed the power is sufficient. *Purdy Co. v. United States,* 814 F.2d 1183, 1188 (7th Cir.1987).

■ "Indicia of 'responsible person' status include: holding corporate office, owning stock in the company, serving on the board of directors, possessing authority to sign checks, and control over corporate financial affairs." *Kim,* 111 F.3d at 1362–63. Delegation of that authority and responsibility does not relieve the delegator from liability. *IRS v. Charlton,* 2 F.3d 237, 240 (7th Cir.1993). Further, the fact that another individual could also be considered a "responsible" person under Section 6672 and/or could be subject to liability has no effect on Jefferson's potential responsibility and corresponding liability. *See Monday v. United States,* 421 F.2d 1210, 1214 (7th Cir.1970). Jefferson clearly qualified as a "responsible" person. Jefferson was president of New Zion's board of directors for almost twenty years and at all times relevant to this action. Jefferson also had check signing authority and control over New Zion's financial affairs.

■■ Next, the court must determine whether Jefferson "willfully" failed to pay the delinquent taxes. Willful conduct in the context of Section 6672 means a voluntary, conscious, or intentional decision not to remit tax payments. *Thomas,* 41 F.3d at 1114. A specific fraudulent intent or evil motive is not required. *Id.* A responsible person willfully fails to remit taxes if he pays other creditors after he knows of the employer's failure to pay withheld funds to the IRS. *Id.* The court can also make a finding of willfulness, if it finds that a responsible person recklessly disregarded a known risk that the trust funds may not have been paid to the IRS. *Id.* In other words, a responsible person acts willfully if he clearly should have know

that there was a grave risk the withholding taxes were not being paid and he could have verified that fact easily. *Wright v. United States,* 809 F.2d 425, 427 (7th Cir. 1987). Jefferson bears the burden of showing that the failure to pay withholding taxes was not willful. *Thomas,* 41 F.3d at 1111.

Jefferson's assertion that he did not actually know of New Zion's outstanding tax liability until March or April 2001, does not defeat the Government's motion for summary judgment. Jefferson was president of the board in 1998 when New Zion previously failed to pay withholding taxes to the IRS. Jefferson was aware of the 1998 failure and was actively involved in attempts to remedy the situation. Jefferson was also aware that it was Hayes' responsibility as the director of New Zion to timely remit required tax payments to the IRS and that she failed to remit those payments, resulting in the 1998 tax liability. Jefferson also knew that New Zion lost its funding from the United Way, in part, because of its failure to pay outstanding tax liabilities. Mere knowledge of a past deficiency does not impose strict liability on a responsible person for future delinquencies. *Wright,* 809 F.2d 425, 428 (7th Cir.1987). However, "if a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he failed to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against nonpayment." *Id.*

■ After the 1998 tax deficiency, Jefferson and the other members of the board of directors instructed Hayes to make all required tax payments, however, they did not implement any financial controls to

insure that the payments were made. The board, including Jefferson, also hired an accounting firm to handle New Zion's financial reporting. Beginning in August 1999, the accounting firm generated monthly financial reports that clearly showed a steadily increasing tax deficiency on the part of New Zion. Indeed, during the times relevant to this case, the board of directors adopted one or more of those financial reports [the exact number is disputed] by majority vote at their board meetings. Yet, Jefferson states that he was not aware of New Zion's ongoing failure to remit payroll taxes. Nevertheless, Jefferson concedes that the financial reports were available in a file at New Zion's office and he could have accessed them at anytime. Clearly, Jefferson exhibited a reckless disregard for a known risk that New Zion was not making required trust fund payments to the IRS and he made absolutely no effort to ascertain the status of New Zion's tax payments. Based on these undisputed facts, the court finds that Jefferson acted willfully as defined by applicable law. Because Jefferson was responsible for making the disputed tax payments and willfully failed to do so, the Government properly held Jefferson responsible for the deficiency pursuant to 26 U.S.C. § 6672(a) and is entitled to judgment it its favor.

## III. Conclusion

For the reasons set forth above, the Government's motion for summary judgment is granted. Jefferson's motion for summary judgment is denied. Jefferson's motion to strike is denied. Defendant's third-party action against Velma Hayes is dismissed. All matters having been resolved, judgment will be entered in favor of defendant and against plaintiff.